# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MARIA J. SOSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-00269-N |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria J. Sosa brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB").

The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge for all proceedings in this Court pursuant to 28 U.S.C. § 636(c). (*See* Doc. 17 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").)

Upon consideration of the administrative record ("R.") (Doc. 9), Sosa's brief (Doc. 10), the Commissioner's brief (Doc. 13), and the arguments presented at the hearing held January 16, 2014 (*see* Doc. 20), it is determined that the

Commissioner's decision denying Sosa benefits should be **AFFIRMED**.[1]

## I. Procedural Background

Sosa filed an application for DIB on November 1, 2010 (R. 135-143), alleging she became disabled March 6, 2006 (*see* R. 137). Her application was initially denied. (*See* R. 59-65.) A hearing was then conducted before an Administrative Law Judge on February 15, 2012 (*see* R. 40-58). On April 13, 2012, the ALJ issued a decision finding Sosa was not disabled (R. 22-39), and she sought review from the Appeals Council. The Appeals Council issued a decision declining to review the ALJ's determination on April 3, 2013 (*see* R. 1-8)—making that determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on May 22, 2013 (*see* Doc. 1).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, a plaintiff (also referred to herein as a claimant) bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether that burden has been met, and thus a claimant has proven that he or she is disabled, the examiner (most often an ALJ) must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work

---

[1] Any appeal taken from this memorandum opinion and order and corresponding judgment shall be made directly to the Eleventh Circuit. (*See* Doc. 17 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

history.  *Id*.  An ALJ, in turn,

> uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the [residual functional capacity, or] RFC[,] to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. App'x 868, 870 (11th Cir. Feb. 9, 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he or she cannot do his or her past relevant work, it then becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record."  *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the Commissioner's decision to deny a plaintiff benefits is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

3

*Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is **supported by** substantial evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)) (emphasis added).

On appeal to this Court, Sosa asserts two—related—reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence):

(1) The Commissioner erred in rejecting the opinion of Mark Pita, M.D., her treating physician; and

(2) After rejecting Dr. Pita's opinion, the Commissioner erred in rendering a residual functional capacity assessment that is not supported by the medical opinion of any treating or examining source, and lacks an articulation of linkage to the medical evidence of record.[2]

---

[2] An ALJ's RFC determination need not necessarily be supported by an opinion (*i.e.,* an RFC or physical capacities evaluation) from a treating or examining physician. *Contra Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003). Since *Coleman*, this Court has recognized that such a requirement is not a correct pronouncement of the law. *See, e.g., McMillian v. Astrue*, CA No. 11–00545–C, 2012 WL 1565624 (S.D. Ala. May 1, 2012); *see also id.* at *4 n.5 (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal

4

The Court will address each reason in turn.

## III. Analysis

### A. The ALJ has articulated an appropriate reason, supported by substantial evidence, to not give Dr. Pita's opinion controlling weight.

On appeal, Sosa contends that the opinion of her treating physician, Dr. Mark Pita—rendered through a physical capacities evaluation ("PCE") and a clinical assessment of pain ("CAP") both completed November 8, 2011 (R. 299-300 [Ex. 10F])[3]—shows that she "is unable to perform even sedentary work on a sustained basis." (Doc. 10 at 7.) Dr. Pita, as explained in the plaintiff's brief,

> has an established treatment relationship with Ms. Sosa, since at least July of 2006, and he prescribes prescription medications to help manage her pain. His opinion, with regard to Ms. Sosa's physical limitations and degree of pain, is supported by the objective evidence. Moreover, his opinion is not conclusively countered by any other opinion evidence of record from a treating or examining physician during the relevant period of time. Had the ALJ properly accepted the opinion of Dr. Pita with regard to the extent of Ms. Sosa's physical limitations and degree of pain, she would have necessarily found that Ms. Sosa's ability to perform work-related tasks is more significantly compromised. In fact, the ALJ's first hypothetical question posed to the vocational expert was based on the opinion of Dr. Pita in Exhibit 10F ([R.] 299), and the vocational expert testified that no jobs would be available for such an individual ([R.] 55-56).

---

punctuation altered and citation omitted)). As such, the Court will focus on Sosa's "linkage" argument.

[3] Sosa also points to the CAP Dr. Pita completed April 29, 2011 (R. 209 [Ex. 1F]). In both CAPs, Dr. Pita opines that Sosa's "[p]ain is frequently present to such an extent as to be distracting to the adequate performance of work activities." In the April 2011 CAP, he further opines that "[m]edications can cause side effects which impose some limitations upon [Sosa] but not to such a degree as to create serious problems in most instances, but in the November 2011 CAP, his opinion is that "[m]edication side effects can be expected to be severe and to limit [Sosa]'s effectiveness due to distraction, inattention, drowsiness, etc." (*Compare* R. 209, *with* R. 300.)

5

(*Id.* at 10-11.)

As this Court has recently reiterated,

If an RFC from a treating source exists in the record, before the Court may consider whether an ALJ's RFC determination that does not give controlling weight to the treating source RFC is supported by substantial evidence, it must first determine whether substantial evidence supports the reasons the ALJ articulated for not giving controlling weight to the opinions of the treating source.

*Warbington v. Colvin*, Civil Action No. 13–00119–N, 2013 WL 6627015, at *8 (S.D. Ala. Dec. 17, 2013) (citing *Thomas v. Astrue*, No. CA 11–0406–C, 2012 WL 1145211, at *9 (S.D. Ala. Apr. 5, 2012) ("Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of [the treating physician's] PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.")). As to treating source opinions, the law in this Circuit is that they

"must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).[4] Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those

---

[4] "In every case, a treating physician will have greater access to the medical records, and more familiarity with the patient and his condition than will an examining physician or a physician who merely reviewed the record evidence. This is the reason for the treating physician rule whereby greater deference is usually accorded to the opinion of a treating physician than the opinion of a physician who has only examined the patient one time or the opinion of a physician who has merely reviewed the medical records. This is the reason the courts require an ALJ to provide specific, legitimate reasons for discounting a treating physician's opinion." *Vine v. Astrue*, Civil Action No. 09-2212-KHV-GBC, 2010 WL 2245079, at *11 (D. Kan. May 11, 2010) (internal citations omitted), *report and recommendation adopted*, 2010 WL 2245076 (D. Kan. June 2, 2010).

6

reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. Sept. 21, 2010) (per curiam) (some internal citations modified and footnote added); *accord D'Andrea v. Commissioner of Soc. Sec. Admin.*, 389 Fed. App'x 944, 947-48 (11th Cir. July 28, 2010) (per curiam).

As to the weight to be given Dr. Pita's opinion, the ALJ stated that she "gives [it] little weight[,]" explaining,

> In November 2011, Dr. Pita opined that the claimant can only sit for one hour in a day, stand for one hour, and only occasionally lift ten pounds. Dr. Pita also opined that the claimant would be distracted from adequate performance of work activities due to pain and would experience severe side effects from medication. (Ex. 10F) The medical evidence does not support Dr. Pita's opinion. Specifically, as mentioned above, diagnostic scans show evidence of some degeneration; however, the degenerative changes are not significant enough to cause the level of limitation suggested by Dr. Pita. For example, there is no evidence of stenosis. Further, multiple physicians have noted no neurological or musculoskeletal dysfunction. Also, no physician has recommended surgical intervention. As a whole, this evidence strongly indicates that the claimant is capable of performing more work activity than opined by Dr. Pita.

(R. 35.)

Sosa argues that this decision by the ALJ is, itself, "certainly a medical opinion, and the ALJ needed some evidence to support it." (Doc. 10 at 7.) She continues,

> How does the ALJ conclude that the spinal defects indicated on the November 18, 2011 MRI do not give rise to the symptoms and degree of pain [she] alleged . . . , which allegations Dr. Pita found to be credible? The ALJ fails to cite any medical source opinion in support of her conclusion. Indeed, there is no such supporting evidence.

7

(*Id.*; *see also id.* at 12 (contending that an "ALJ may not properly discount the treating physician's opinion where the medical evidence does not conclusively counter the opinion and no other good cause is offered" (citing *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987))).)

First, it is significant that Dr. Pita's opinion (R. 299-300 [Ex. 10F]), which Sosa contends conclusively proves she is disabled (*see, e.g.,* Doc. 10 at 12), is dated November 8, 2011, while the November 2011 MRI, which Sosa implies supports that opinion, was not conducted until November 18, 2011. (*See* R. 301 [Ex. 11F].) The impression from that MRI, as found by Dr. Larson, was that "[t]here is a linear fluid collection within the thoracic cord at the level of the T11 vertebral body." (*Id.*) Dr. Larson noted that, based on this, "[t]he two main considerations [were] myelomalacia versus a syrinx[,]" but that "[f]urther assessment with an MRI of the thoracic spine without and with IV contrast can be considered to exclude a possible mass within the cord." (*Id.*) Dr. Larson further noted that "[n]o lumbar spine canal stenosis" was found. (*Id.*) It appears that Dr. Pita received this report on November 21, 2011 (*see id.*) and reviewed it with Sosa the next day (*see* R. 302 (treatment record dated Nov. 22, 2011, noting, "MRI of the lumbar spine shows possible syrinx at T11. Will refer for further evaluation.")). Based on Dr. Larson's impression of no stenosis and both doctors' conclusion that further assessment was required, this Court finds no fault in the ALJ's conclusion not to accept this MRI as definitive proof as to "the symptoms and degree of Sosa's pain." (Doc. 10 at 7.)

Next, contrary to Sosa's argument, the ALJ's decision not to give controlling

8

weight to Dr. Pita's November 8, 2011 opinion, does not raise the specter of *Schnorr*. That is, the ALJ here did not "fail[] to present good cause to discount the opinion[] of [a treating medical source]." *Schnorr*, 816 F.2d at 582; *see also, e.g., England v. Astrue*, Civil Action No. 6:12–CV–01093–KOB, 2013 WL 5230001, at *2-3 (N.D. Ala. Sept. 17, 2013) ("[W]here medical evidence does not conclusively counter the treating physician's opinion, ***and no other good cause is presented***, the Commissioner cannot discount the treating doctor's opinion." (citing *Schnorr*) (emphasis added)).[5] The ALJ instead discounted Dr. Pita's opinion because the medical evidence did not support it. (*Compare* R. 35 ("For example, there is no evidence of stenosis."), *with* R. 301 (results of Nov. 18, 2011, ordered by Dr. Pita, noting, "[n]o lumbar spine canal stenosis").) *See Madison v. Astrue*, No. 08-1243-JTM, 2009 WL 1873811, at *5 (D. Kan. June 30, 2009) ("An ALJ may give less weight to the opinion of a physician when it is inconsistent with the other substantial evidence in the record." (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007))); *Lewis v. Astrue*, No. CA 12–00201–C, 2012 WL 5868615, at *8 (S.D. Ala. Nov. 20, 2012)[6]; *cf. Patterson v.*

---

[5] Moreover, it has not been shown that, "[c]onsidering the record as a whole, the medical evidence does not conclusively counter [Dr. Pita's] opinion[]." *Schnorr*, 816 F.2d at 582.

[6] In *Lewis*, this Court rejected the same argument made on appeal here—that, in choosing not to give a treating source opinion controlling weight, "the ALJ [ ] substitute[d] her judgment for that of a medical . . . expert[,]" (Doc. 10 at 7). There, this Court noted that one reason given by the ALJ for discounting the treating opinion (the "limitations seem substantially in excess of what would be expected even given the complaints reported by the claimant")

> could be interpreted, at first blush at least, as the ALJ substituting her own judgment for the judgment of a physician, but [that] reason, although nebulous, [was] better characterized, after consideration of [the] lengthy

9

*Astrue*, No. 1:07–cv–00129–MP–AK, 2008 WL 4097461, at *1 (N.D. Fla. Aug. 27, 2008) ("[A] contradiction between a treating physician's opinion and her own medical records has been held to constitute one possible sufficient ground for rejecting a treating physician's opinion." (citing *Lewis*, 125 F.3d at 1440)).

**B. The ALJ's RFC assessment is linked to and supported by substantial evidence.**

Because the ALJ has articulated an appropriate reason to not give Dr. Pita's opinion controlling weight, and because that reason is supported by substantial evidence, the undersigned will now turn to the ALJ's RFC determination, to examine whether that assessment is linked to specific evidence in the record regarding the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work. *See, e.g., Salter v. Astrue*, No. CA 11–00681–C, 2012 WL 3817791, at *3 (S.D. Ala. Sept. 4, 2012)

**1. Determining RFC.**

A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure"—"is a medical assessment of what th[at plaintiff] can do in a work setting despite any mental, physical or environmental limitations caused by [his or

---

restrictions . . . , as the ALJ finding [the] opinion is either "not bolstered by the evidence[,]" *Phillips*, 357 F.3d at 1241, or, put slightly differently, not consistent "with the evidence as a whole and other factors[,]" *Brihn v. Astrue*, 582 F. Supp. 2d 1088, 1100-01 (W.D. Wis. 2008). Both provide good cause to afford a treating source less than controlling weight.

*Id.* (internal citation modified).

her] impairments and related symptoms." *Watkins*, 457 Fed. App'x at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also Packer v. Commissioner, Soc. Sec. Admin.*, --- Fed. App'x ----, 2013 WL 5788574, at *1 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments." (citing *Lewis*, 125 F.3d at 1440)). At the fourth step of the sequential analysis, at which the ALJ determines a plaintiff's RFC, an ALJ utilizes the plaintiff's past relevant work as a starting point, from which his or her current impairments (or at least those documented by credible evidence) are deducted, to determine: (1) the RFC; and (2) whether that RFC allows the plaintiff to perform his or has past relevant work *or, if not,* whether, considering that RFC, along with the plaintiff's age, education, and work experience, there are other jobs he or she can perform.[7] *See id.* ("The ALJ's finding as to a [plaintiff's] RFC is based on ***all the relevant evidence in the record***, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do her past relevant work or any other work." (citing §§ 404.1545(a)(1), (5), 416.945(a)(1),

---

[7] Indisputably, an ALJ is never going to find an RFC that is in excess of a plaintiff's past-relevant work, as that work is categorized by the ALJ. Therefore, if a claimant had past relevant work in the medium and light range—***as categorized by the ALJ***—an ALJ is not going to then find an RFC greater than medium work and, indeed, might even "default" to light work. *Cf. Squires v. Astrue*, Civil No. 07-5096, 2008 WL 1776941, at *9 (W.D. Ark. Mar. 24, 2008) (rejecting a plaintiff's argument "that the ALJ [erred] in concluding that she could return to work at a heavier exertional level than she had ever performed in the past"; in doing so, the court noted that the VE was present during the plaintiff's description of her past work as a caregiver and "categorized the caregiver job based on plaintiff's own description of the position, which would qualify the job as heavy work" under the regulations (citations omitted)).

(5)) (emphasis added)).

Here, at the fourth step, the ALJ determined Sosa's RFC as follows: "After careful consideration of the entire record, the [ALJ] finds that, through the date last insured[—December 31, 2011 (*see, e.g.,* R. 28)—]the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)." (R. 32.[8])

## 2. Substantial evidence review of an RFC determination.

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "provide[d] a sufficient rationale to link" substantial record evidence "to the legal conclusions reached." *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005); *compare id., with Packer v. Astrue*, Civil Action No. 11–0084–CG–N, 2013 WL 593497, at *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and

---

[8] In determining that Sosa retains the RFC "to perform the full range of light work[,]" the ALJ necessarily found that Sosa can "lift[] no more than 20 pounds at a time and occasionally lift[] or carry[ ] objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The statutory definition of "light work" continues,

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id.*

12

other requirements of work." (quoting *Salter*, 2012 WL 3817791, at *3)), *aff'd* --- Fed. App'x ----, 2013 WL 5788574[9]; *see also Hanna v. Astrue*, 395 Fed. App'x 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)); *Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision." (quoting *Russ*, 363 F. Supp. 2d at 1347)); *compare Packer*, 2013 WL 593497, at *4 (While "the Eleventh Circuit has declined to impose overly rigid requirements when reviewing disability decisions[,] meaningful review . . . requires [that] ALJs [ ] state with clarity the grounds for their decisions." (internal citations and quotation marks omitted)), *with Packer*, 2013 WL 5788574, at *1 ("There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is

---

[9] In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC determination was not supported by substantial evidence" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at *2.

13

not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (citing *Dyer*, 395 F.3d at 1211)).[10]

In her brief, Sosa contends,

[t]he extent of the Commissioner's explanation, as to the manner in which the residual functional capacity was derived, was as follows ([R.] 34):

> As a whole this evidence, [sic] supports the finding of a light residual functional capacity. Specifically, there is no evidence of spinal stenosis or marked degeneration in the lumbar or cervical spine. Second, multiple physicians have noted that the claimant has a normal gait and normal musculoskeletal and neurological examination. Further, at the consultative examination, the claimant demonstrated the ability to walk without difficulty and the ability to perform postural such as squatting, tandem walking, and walking on heels and toes.

This "explanation" by the ALJ[, Sosa argues,] fails to provide any

---

[10] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

> linkage between the medical evidence of record and the assessment of [her RFC].

(Doc. 10 at 16.)

First, contrary to Sosa's characterization, the excerpt above is "not the extent of the Commissioner's explanation"; it is merely a summary made after setting out the "documentary evidence" (*see* R. 33-34). The ALJ, moreover, considered Sosa's subjective complaints of pain (*see* R. 34) as well as the opinions of Drs. Pita, Saiter, and Ozment (*see* R. 35).

Importantly, in establishing Sosa's RFC, which means determining Sosa's "remaining ability to do work despite her impairments[,]" *Packer*, 2013 WL 5788574, at *1—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ walks through evidence documenting Sosa's history of back and neck pain complaints from October 2006 through January 2008 (*see* R. 33) to conclude that such evidence is "significant because it shows that prior to the alleged onset date, [Sosa] did not have significant degeneration in the cervical spine. The evidence also shows[, according to the ALJ,] that [Sosa] maintained normal strength and gait . . . [and] that [she] did not have a surgical condition." (R. 33.) The ALJ then considers evidence that, she contends, "shows that [Sosa] received very little treatment for back and neck pain" after the alleged onset date (R. 33; *see* R. 33-34), before concluding that "this evidence . . . as a whole" supports her conclusion that Sosa can perform light work (R. 34), and then turning to—and considering—Sosa's subjective complaints of pain and the medical opinion evidence.

The ALJ's analysis shows to this Court that she considered Sosa's medical

15

condition as a whole in determining Sosa's RFC. Accordingly, the ALJ's RFC determination, contrary to Sosa's belief, provides "an articulated linkage to the medical evidence of record." (Doc. 10 at 12.) The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. App'x at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 2013 WL 5788574, at *1 (an ALJ [must] provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole" (emphasis added)). Thus, by "showing her work" (*see* R. 33-35), the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of her decision.

## IV. Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Sosa benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the 4th day of February, 2014.

                                             */s/ Katherine P. Nelson*
                                             **KATHERINE P. NELSON**
                                             **UNITED STATES MAGISTRATE JUDGE**